IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | : | CHAPTER 11 |
| | : | |
| DRAW ANOTHER CIRCLE, LLC, | : | Case No. 16-11452 (KJC) |
| *et al.*[1] | : | (Re: D.I. 1697) |
| Debtors. | : | |

## MEMORANDUM[2]

**BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

On June 13, 2016, the Debtors filed chapter 11 bankruptcy petitions.[3] The Debtors' plan

of liquidation (the "Plan")[4] was confirmed by an Order of the Court dated February 14, 2017.[5] The

Plan established a Liquidating Trust for the purpose of, among other things, administering,

monetizing and liquidating the Liquidating Trust Assets, resolving all Disputed Claims, and

making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating

Trust Agreement.[6]

Presently before the Court is the motion for leave to file a late claim filed by Ms. Shelly

Adele Peterson on October 11, 2018 (the "Late Claim Motion").[7] Ms. Peterson claims she was

---

[1] The Debtors in this jointly administered case are Draw Another Circle, LLC; Hastings Entertainment, Inc.; MovieStop, LLC; SP Images, Inc.; and Hastings Internet, Inc. (collectively, the "Debtors").

[2] This Memorandum constitutes findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052. The Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. § 157 and § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the Court has authority to enter a final order consistent with Article III of the United States Constitution.

[3] The Debtors operate multimedia entertainment retail companies. *See* Declaration of Duane A. Huesers in Support of Debtors' First Day Pleadings (D.I. 18).

[4] The Debtors' and the Creditors' Committee's First Amended Joint Combined Disclosure Statement and Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, D.I. 1076.

[5] D.I. 1195.

[6] Plan, IX.B. All capitalized terms not defined herein shall have the meaning provided in the Plan and the Liquidating Trust Agreement.

[7] D.I. 1706.

the victim of a false arrest in one of the Debtors' stores, and her claim seeks damages, as well as sanctions, in the amount of $24 million for (among other things) unlawful imprisonment, false felony charges, perjury, concealment of evidence, racketeering, and fraud.[8]

On November 5, 2018, the Liquidating Trustee filed an objection to the Late Claim Motion. In addition to arguing that Ms. Peterson has not proved excusable neglect for filing a late claim, the objection includes a request that any order denying the Late Claim Motion also prohibit further correspondence and filings by Ms. Peterson regarding her claims. Ms. Peterson filed a Response on November 14, 2018, and a hearing was held on November 19, 2018. At the hearing, the Court admitted the Liquidating Trustee's exhibits into evidence, after overruling Ms. Peterson's objections.[9] The Court also considered all exhibits and attachments to Ms. Peterson's Late Claim Motion and other filings.

For the reasons set forth below, the Late Claim Motion will be denied and the further relief requested by the Liquidating Trustee will be granted.

## BACKGROUND

Bankruptcy case filings related to Ms. Peterson

On July 6-7, 2016, each of the Debtors filed its respective *Schedule of Assets and Liabilities* and *Statement of Financial Affairs* (the "Schedules" and the "SOFA"), which were amended on August 29, 2016.[10] On Exhibit 7 to the SOFA, Debtor Hastings Entertainment, Inc. listed legal actions, administrative proceedings, executions, attachments or audits, which included a customer

---

[8] Late Claim Motion at 5.

[9] The Liquidating Trustee's exhibits are referred to herein as "Tr. Ex. #__."

[10] The initial Schedules and SOFA filed on July 6-7, 2016 are docketed at D.I. 266-275, and the Amended Scheduled and SOFA filed on August 29, 2016 are docketed at D.I. 622-631.

discrimination proceeding commenced by Ms. Peterson in the Superior Court for the State of Washington, Case No. 15-3993-00 (the "Customer Discrimination Action").[11]

In Hastings Entertainment's Schedules E/F, Ms. Peterson is identified as a potential creditor holding a contingent, unliquidated, disputed claim based on the Customer Discrimination Action (the "Peterson Scheduled Claim").[12]

On September 6, 2016, the Court entered an Order establishing bar dates for filing proofs of claim (the "Bar Date Order"), setting October 28, 2016 as the deadline for certain creditors to file proofs of claim against the Debtors.[13] Rust Consulting/Omni Bankruptcy, the Debtors' court-appointed claims and noticing agent (the "Claims Agent"), mailed a notice of the Bar Date and proof of claim forms to the Debtors' creditors and other known parties in interest.[14] On September 9, 2016, Ms. Peterson was served with a copy of the Bar Date notice, which was mailed to her address in Moses Lake, Washington.[15] The Debtors have no record of Ms. Peterson filing a proof of claim before the applicable Bar Date.

On June 29, 2017, the Liquidating Trustee filed an objection to the Peterson Scheduled Claim on the grounds that it was contingent, unliquidated, and/or disputed, and because no additional information had been provided by the claimant.[16] The Liquidating Trust's notice agent mailed the Fourth Omnibus Objection to Ms. Peterson at the same address in Moses Lake, Washington to which the Bar Date Notice was sent.[17] Ms. Peterson did not respond to the Fourth

---

[11] Tr. Ex. #15 (D.I. 625).
[12] Tr. Ex. #14 (D.I. 624, p. 343 of 514).
[13] D.I. 670.
[14] Tr. Ex. # 12 (D.I. 769).
[15] *Id.*, p. 2613 of 2874.
[16] The Liquidating Trustee's Fourth Omnibus Objection to Certain (I) Duplicate Claims, (II) Amended and Superseded Claims, and (III) Insufficient Documentation Claims (Non-Substantive) (the "Fourth Omnibus Objection") (D.I. 1441).
[17] The Liquidating Trustee's noticing agent is Reliable, Inc. Tr. Ex. #13. (D.I. 1668, p. 27 of 38).

Omnibus Objection in a timely manner. On July 20, 2017, an Order was entered sustaining the Fourth Omnibus Objection, which disallowed the Peterson Scheduled Claim.[18]

Communications from Ms. Peterson to the Liquidating Trustee's counsel

On October 24, 2017, Ms. Peterson contacted counsel to the Liquidating Trustee by email asserting that a certified letter she sent to him in July had been returned to her.[19] She also asked for help in asserting a claim against Hastings based upon a violation of her 4th Amendment Rights and claimed that she had "witnessed the illegal wire transfers by Hastings."[20] Counsel for the Liquidating Trustee responded by noting that the Claim Agent's records did not reflect that she filed a proof of claim and that her scheduled claim had been disallowed by Court order.[21] The Liquidating Trustee's counsel also asked Ms. Peterson to state succinctly her allegations of the Debtors' wrongdoing and noted that the Liquidating Trust had filed actions against certain former officers and directors of Hastings, as well as related entities.[22]

On October 29, 2017, Ms. Peterson sent another email claiming that she had "found the saved email . . . on them accepting my claim," which she wanted to send to the Liquidating Trustee, along with the July mail that had been returned to her.[23] She also stated that she hoped she "still [had] time to file a tort claim."[24] On the same date, the Liquidating Trustee's counsel responded by asking Ms. Peterson to send the documentation to his new address, which he provided.[25] On November 6, 2017, Ms. Peterson sent a follow-up email indicating that she

---

[18] Tr. Ex. # 6 (D.I. 1462).
[19] Tr. Ex. # 4 at 3.
[20] Id.
[21] Id. at 2-3.
[22] Id.
[23] Tr. Ex. # 4 at 2.
[24] Id.
[25] Id. at 1.

mailed the documentation to the Liquidating Trustee's counsel and to the court, but counsel to the Liquidating Trustee responded that he had not received anything.[26]

On December 6, 2017, in response to a voicemail from Ms. Peterson, the Liquidating Trustee's counsel sent an email stating:

> In response to your voice mail message you left me on Wednesday, December 6, please be advised that there is no record of your having timely filed a proof of claim in the Hastings bankruptcy cases. Thus, neither the Debtors nor the Liquidating Trustee have objected to any claim you filed. In addition, we have not adjourned any matter involving your claim because no such claim exists on the claim register.[27]

Ms. Peterson sent an email response the next day stating that her "claim was filed in Dan Crow's office,"[28] and accusing the Liquidating Trustee's counsel of, among other things, hiding the file she had allegedly sent.[29] On December 19, 2017, Ms. Peterson sent three emails to the Liquidating Trustee's counsel further accusing counsel of concealing her files and other things, and stating that "also all 3 mailings I recieved [sic] had the wrong address of mine on it. So in actuality the letters sent to me through this entire ordeal not 1 time got my address right."[30] She indicated that her address has a unit or apartment number ("n.e. #10") that was not included in the address used by the Claims Agent.[31] The Liquidating Trustee's counsel responded to the emails by advising that "neither my law firm [nor] myself represent you individually in the Hastings bankruptcy cases pending in the US Bankruptcy Court for the District of Delaware. You should consider obtaining your own bankruptcy counsel if you determine it is necessary."[32]

---

[26] Id.
[27] Tr. Ex. #5 at 5.
[28] The record does not contain any information about the identity or relevance of Dan Crow.
[29] Id. at 4-5.
[30] Id. at 2.
[31] Id.
[32] Id. at 1.

<u>Ms. Peterson's court filings</u>

On November 1, 2017, Ms. Peterson sent a letter to the Court, which was docketed at D.I. 1563, stating that she has been a creditor of Hastings Entertainment since 2013 and attempting to explain the basis of her claim.[33]    Attached to the November 1 Letter are copies of a Police Department Incident Report Form, dated April 17, 2013, describing Ms. Peterson's arrest in a Hastings Entertainment store for trafficking in stolen property after she attempted to return stolen items to the store.[34]    Also attached are pleadings filed by Ms. Peterson against Hastings Entertainment in the Superior Court for the State of Washington seeking damages for false arrest and unlawful imprisonment.[35]

On July 9, 2018, Ms. Peterson filed a Petition with the Court seeking recovery of damages, including treble damages, against "John Marmaduke and Hastings Entertainment" for, among other things, "violation of due process," "ruinous injustice," "racketeering, laundering billions, terrorism acts," "depravation [sic] of federal statuatory[sic] rights," "punitive damages, personal injury damages, unlawful imprisonment damages," and "financial and emotional suffering."[36] The Petition seeks recovery from Hastings Entertainment of $8 million plus 14% interest.[37] The Petition also attaches copies of receipts for costs such as copying and certified mailings, presumably as part of a reimbursement claim.[38]

---

[33] Tr. Ex. # 7 (D.I. 1563) (the "November 1 Letter").

[34] *Id.* at 10-29.

[35] Tr. Ex. # 7 at 31-50.  At a hearing on October 2, 2018, Ms. Peterson stated that the Washington state court action was dismissed.  Tr. Ex. # 10, Hr'g Tr. Oct. 2, 2018 at 7:4-23.

[36] Tr. Ex. # 8 (D.I. 1662) (the "Petition").  The Liquidating Trustee notes that John Marmaduke was a prior owner and the CEO of Hastings Entertainment, who sold his equity interests and retired from Hastings Entertainment in 2014.  (Tr. Objection, D.I. 1706, at 6 n. 5).

[37] Tr. Ex. #8 at 1.

[38] *Id.* at 2, 4 – 11.  The Liquidating Trustee notes that the receipts total less than $200.00 and include expenses such as $12.39 in copying fees from Staples Copy and Print Center, $7.23 for a certified mail receipt for a letter sent to Hastings Entertainment and John Marmaduke in 2016, and $2.06 in postage for first class mail to Amarillo, Texas in 2015. (Tr. Obj., D.I. 1706, at 6).

On August 17, 2018, the Liquidating Trustee filed a motion seeking to dismiss and/or deny Ms. Peterson's Petition with prejudice.[39]  On October 2, 2018, the Court held a hearing on the Liquidating Trustee's motion to dismiss the Petition, which Ms. Peterson attended by telephone.[40] Ms. Peterson was given the opportunity to describe the basis of her claim.  At the hearing, the Court determined that Ms. Peterson did not file a claim before the Bar Date and did not respond to the objection to her scheduled claim.[41]  However, the Court noted Ms. Peterson's allegation that the notices were not properly addressed and decided that she should be permitted to file a motion seeking leave to file a late claim.[42] The Court entered an Order granting the Liquidating Trustee's motion to dismiss or deny the Petition, and set a deadline for Ms. Peterson to file a motion for leave to file a late claim.[43]

On October 11, 2018, Ms. Peterson filed the Late Claim Motion.[44]  On November 5, 2018, the Liquidating Trustee filed an objection to the Motion,[45] and Ms. Peterson filed a Response.[46] The hearing on the Late Claim Motion was held on November 19, 2018, which Ms. Peterson attended by telephone.

<u>Discussion</u>

Under Bankruptcy Rule 3003(c)(3), a bankruptcy court fixes a deadline for filing proofs of claim in a chapter 11 case.[47]  After the deadline for filing claims has passed, a claimant may file a motion under Bankruptcy Rule 9006(b)(1) seeking the court's permission to file a late claim,

---

[39] Tr. Ex. # 9 (D.I. 1669).

[40] Tr. Ex. # 10.

[41] *Id.* at 19:15 – 20:2.

[42] *Id.* at 21:13 – 22.

[43] Tr. Ex. # 11 (D.I. 1692).

[44] D.I 1697.

[45] D.I. 1706.

[46] D.I. 1709.

[47] Fed. R. Bankr. P. 3003(c)3) provides in pertinent part that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."

which the court should grant only if the party's failure to file a timely claim was the result of "excusable neglect."[48]  In its well-known *Pioneer*[49] decision, the United States Supreme Court concluded that determining whether neglect is "excusable" depends upon all relevant circumstances surrounding the party's omission, including, in particular, consideration of the following factors:

(i)     the danger of prejudice to the debtor;
(ii)    the length of the delay and its potential impact on judicial proceedings;
(iii)   the reason for the delay, including whether it was within the reasonable control of the movant; and
(iv)   whether the movant acted in good faith.[50]

"All factors must be considered and balanced; no one factor trumps the others."[51]

The Bar Date for filing claims in the Debtors' bankruptcy cases was October 28, 2016. Ms. Peterson did not file a claim in the bankruptcy case by the Bar Date.  She also did not respond timely to the Liquidating Trustee's objection to her scheduled claim, which was disallowed by Order dated July 20, 2017.

In October 2017 - - about one year after the Bar Date and three months after the Order was entered granting the objection to the scheduled claim - - Ms. Peterson contacted the Liquidating Trustee about asserting a claim in the case.  In November 2017 and in July 2018, she sent a letter

---

[48] Fed. R. Bankr. P. 9006(b)(1) provides:
> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

[49] *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

[50] *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 4193.

[51] *Hefta v. Off'l Comm. Of Unsecured Creditors (In re Am. Classic Voyages Co.)*, 405 F.3d 127, 133 (3d Cir.2005) (citing *George Harms Constr. Co., Inc. v. Chao*, 371 F.3d 156, 164 (3d Cir.2004)).

and a petition to the Bankruptcy Court in an effort to assert a late claim. Her Late Claim Motion describes the basis of her claim and asserts that notices sent by the Claims Agent were not addressed properly. In response, the Liquidating Trustee argues that an analysis of the *Pioneer* factors weighs against allowing Ms. Peterson to file a late claim.

(1) Prejudice to the Debtors

The first *Pioneer* factor - - prejudice to the Debtor - - "does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence."[52] Relevant considerations regarding prejudice include:

> the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims.[53]

Damage to other creditors in the form of a reduced recovery is not a consideration.[54]

The Liquidating Trustee argues that allowing Ms. Peterson to file a late claim would result in prejudice to the Trust, as successor to the Debtors' estates. Ms. Peterson asserted her claim after confirmation of the liquidating Plan. The Trust has already made an initial distribution to holders of general unsecured claims under the Plan.[55] If the Late Claim Motion is granted, the Liquidating Trustee argues that the Trust will incur additional and unnecessary administrative expenses litigating Ms. Peterson's claim.[56] Ms. Peterson describes her claim, in part, as follows:

---

[52] *Toscano v. RSH Liquidating Trust (In re RS Legacy Corp.)*, 577 B.R. 134, 139-40 (Bankr. D. Del. 2017) (citing *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)* 188 F.3d 116, 127 (3d Cir. 1999)).

[53] *O'Brien Envtl. Energy*, 188 F.3d at 126.

[54] *O'Brien Envtl. Energy*, 188 F.3d at 126. *See also Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co.)*, 166 B.R. 799, 802 (S.D.N.Y. 1994) (holding that the depletion of resources otherwise available for timely filed claims is not prejudice).

[55] Tr. Ex. #3, ¶ 4.

[56] *Id.*, ¶ 5.

I was falseley [*sic*] arrested for a felony inside of Hastings Entertainment, Moses Lake, WA. It held over my head 543 days. I have several different damages. Personal, Injury Punitave [*sic*] from loss of livestock. Unlawful imprisonment damages. Victim of victimization damages. The Defendants Violate Due process as well as not adhering to requests made for debtor exams and disclosure of the concealed letter to prove my innocence. [57]

[T]his claim is a[n] Injury claim as well as punitave [*sic*] damages, personal injury damages. rule 7055
1) Rule 7055a. A defendant shall not dismiss crime victims claims.
2) Failure of consideration, Fault and fraud of non moving party.
3) Injuries by Defendants to plaintiff constitutes avoidance
4) NATURE OF SANCTIONS
A) RCW1.16.050 RULE AGAINST THE DEFENDANTS, They have had in these proceedings for 5 years sufficient deffence [*sic*] or any rebundant [*sic*] Material pertinetint [*sic*] in this case. They have been caught raceteering [*sic*] massive amounts of money out of this country, which I do believe is considered terrorism acts. Scandalous malicious behavior, Rule 56 Defendants havnt [*sic*] cooperated or communicated in any legal way.[58]

Ms. Peterson provides no plausible facts in her filings, except those describing her allegedly false arrest on April 17, 2013 in a Hastings Entertainment store.[59]

The Debtors scheduled a contingent, unliquidated and disputed claim by Ms. Peterson based on a lawsuit that she filed in Washington State Court against John Marmaduke and Hastings Entertainment. The state court lawsuit was dismissed.[60] Ms. Peterson did not file a proof of claim by the Bar Date and, later (post-confirmation), Ms. Peterson did not provide information to support her claim in response to the Liquidating Trustee's objection. The Late Claim Motion contains a mixture of legal conclusions and unknown theories of damages, with little or no credible support. To grant leave to file her claim at this juncture would disrupt the Trust's administration of the estate and cause the Trust to incur significant time and money to determine the validity and amount of the claim. The Debtors' liquidation may further complicate the Trust's ability to find witnesses

---

[57] Late Claim Motion, p. 4.
[58] *Id.*, p. 9.
[59] Tr. Ex. # 7, pp. 11 – 22.
[60] Tr. Ex. # 10, Tr. 10/2/2018 at 6:18 – 7:17.

and evidence to verify the claim. Reviewing this matter in light of the considerations for prejudice recognized by the Third Circuit in *O'Brien Environmental*, I conclude that this factor weighs in favor of the Trust.

### (2) Length of the delay and impact of the delay on judicial proceedings

The second *Pioneer* factor to consider is the length of the delay in asserting a claim and the impact of the delay on the judicial proceedings. Here, Ms. Peterson first contacted counsel for the Liquidating Trustee one year after the Bar Date and about three months after the Court granted the Trust's objection to her scheduled claim. She followed up by filing a letter with the Court in November 2017 and the Petition in July 2018. Even if I determined that the actual length of this delay was not excessively long, still, the delay will impact estate administration. As discussed above, the state court action was dismissed, and the Trust needs witnesses and evidence to determine the validity and amount of Ms. Peterson's claim, most likely through litigation. This factor weighs in favor of Trust.

### (3) Reason for the delay

The concept of excusable neglect anticipates that the movant's lack of care may have caused the delay, i.e., neglect on the part of the one seeking to be excused.[61] The court, however, should also examine whether the debtor's actions contributed to the neglect.[62]

The gist of Ms. Peterson's argument is that she did not receive proper notice of the Bar Date or of the objection to her scheduled claim. She argues that the mailing address used by the Claims Agent was incomplete because it did not include her apartment or unit number: "n.e. #10."

---

[61] *O'Brien Envtl. Energy*, 188 F.3d at 128.
[62] *Id.* at 128-29. In *O'Brien Environmental Energy*, the Court determined that the claimant's neglect in failing to assert a claim in response to a 12-page application to establish, among other things, an administrative and priority claims reserve was excusable since the neglect "was caused at least in part by O'Brien's own failure to properly alert [claimant] that this 'application' was really an objection to its claim." *Id.* The application did not even list or mention the claimant's name. *Id.*

To support this claim, she attached to her Motion copies of the envelopes received from the Debtors' Claims Agent with the incomplete address.[63]  Ms. Peterson's possession of the envelopes contradicts the basis underlying her request to file a late claim.  The envelopes demonstrate conclusively that she *actually received* notices from the Claims Agent.[64]  The Liquidating Trustee's noticing agent used the same address.[65]  Neither the Debtors nor the Liquidating Trustee contributed to Ms. Peterson's delay in filing her claim.  Ms. Peterson provided no other explanation to excuse her late filings.  Therefore, this factor weighs heavily in favor of the Trust.

### (4) Good Faith of the movant

The final *Pioneer* factor is the movant's good faith in seeking to file a late proof of claim. The Liquidating Trustee questions Ms. Peterson's good faith because she claimed that she was not properly served with notices, even though she had envelopes from the Debtors' Claims Agent in her possession.  However, even assuming, without deciding, that Ms. Peterson acted in good faith, that finding would not materially alter the foregoing analysis determining that the other three *Pioneer* factors weigh against a determination of excusable neglect.

### Additional Relief Requested by the Liquidating Trustee

The Liquidating Trustee's objection includes a request that any order denying the Late Claim Motion also prohibit further correspondence and filings by Ms. Peterson regarding her claims.  The Liquidating Trustee seeks this relief "to ensure the orderly and efficient administration of the Trust," because Ms. Peterson has sent numerous emails to the Liquidating Trustee's counsel, in addition to filing the petition and motions.[66]  Trustee Exhibit 5 contains an email chain between the Liquidating Trustee's counsel and Ms. Peterson, in which Ms. Peterson at times accuses

---

[63] Late Claim Motion, pp. 21 – 26.
[64] Tr. Ex. # 12.
[65] Tr. Ex. # 13.
[66] Tr. Ex. # 5, Tr. Ex. # 16.

counsel of concealing files or lying, and other times seeks counsel's advice. For example, the

emails contain attacks or threats to counsel, including the following:

> Anybody that goes against Legislature Law and protecting Cival [sic] Liberty Rights is obviously hiding more criminal acts. You treated me like dirt like my suffering held prisoner was no big deal. How about you be held 543 days inside your home held with no freedom. I didn't do anything wrong in any realm defending my federal rights. Why would you hate me for standing for Truth and Justice? Why wouldn't you want Justice and Trust out on facts if you sincerely represent this case in an honest manner? The file you have needs to be given to someone who takes my claim serious and dosnt conceiling [sic] my paperwork for months. Very glad I kept sealed all the proof I need I am telling the 100% truth. Are you [counsel] being honest where my large file is I sent you. You have very personal information of mine your [sic] holding on to and would appreciate you giving my file up so Judge Carey gets his letters you have and you have all my papers for entry I typed for the courts back in July. Can you at least try 1 time finding who took it? Don't see you going or moving anything when it comes to my files. Why did you ask me to send them to you if your [sic] not the one shedding light on the fraud? I am not Attorney and I pray God has mercy on the souls of entities ignoring victims of terrorist acts like you have done so well [counsel]. Thanks for standing with me on fighting for Truth, Justice and protecting our homeland. If your [sic] against me you are the enemy in every realm. Power abusers in the Judicial process of these cases needs to end. The creditors are suffering not you, not Marmaduke, not Crow or Billy Mays. The company needs held responsible for unlawful imprisonment, I have punitive damages and kinda think it's priority over a gas bill. I am a nobody in this case and you would like it to remain that way. I get it.[67]

Moreover, Trustee Exhibit # 16 is an email from Ms. Peterson to the Liquidating Trustee's

counsel dated November 7, 2018, with a Subject that refers to counsel as a "LIAR" and states:

> Just wanted your firm to know your abuse ended against Shelly Peterson. [Counsel] May God have mercy on your soul on the 19th. II Corinthians 10:4 THEY ARE THE WORD OF GOD, and the BLOOD, They overcame Satan by the blood of the Lamb and by the word of there [sic] testimony. WE NEED THE WORD AND THE BLOOD.[68]

Upon review of the Trustee's exhibits, I agree that cause exists to grant this relief.

---

[67] Tr. Ex. #5 at 3 (Dec. 19, 2017 email).
[68] Tr. Ex. # 16.

Conclusion

Based upon the foregoing analysis of the *Pioneer* factors, I conclude that Ms. Peterson has not established excusable neglect and the Late Claim Motion will be denied. Moreover, the further relief requested by the Liquidating Trustee will be granted.

An appropriate Order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: December 11, 2018

14